RES PUR-WAHA NPP
071512

## NATURAL GAS SALE AND PURCHASE CONTRACT

| | |
|---|---|
| **DATE:** June 1, 2013<br>**BUYER:** REGENCY FIELD SERVICES LLC<br>2001 Bryan Street, Suite 3700<br>Dallas, TX 75201<br>Attn: Contract Administration<br>Phone: (214) 750-1771<br>Fax #: (214) 750-1749 | **SELLER:** ARABELLA PETROLEUM COMPANY, LLC<br>500 W. Texas Ave., Suite 1450<br>Midland, TX 79701<br>Attn: Contract Administration<br>Phone: (432) 897-4755<br>Fax: (800) 729-0160 |

| | |
|---|---|
| **QUANTITY** | Producer's share of the Residue Gas as provided for in the Gathering Agreement between the parties dated June 1, 2013 ("Gathering Agreement"). |
| **TERM** | Concurrent with the Gathering Agreement. |
| **RECEIPT POINT(S)** | At the Delivery Point(s) identified in the Gathering Agreement. |

| | | |
|---|---|---|
| **MEASURING PARTY** | Regency Field Services LLC | **PAYMENT ADDRESS:** |
| **PRICE** | Net Proceeds Price - a price per MMBTU equal to 100% of the price that Buyer receives for the sale of Seller's Residue Gas to a downstream purchaser, less any fees, percentage deductions and fuel attributable to such sales. | 500 W. Texas Ave., Suite 1450<br>Midland, TX 79701 |

**SPECIAL PROVISIONS:**

THIS SALE IS SUBJECT TO THE "TERMS AND CONDITIONS" ON EXHIBIT "A" ATTACHED TO THIS AGREEMENT.

This represents the agreement reached between BUYER and SELLER

| | | | |
|---|---|---|---|
| **BUYER** | SIGNATURE: *[signed]*<br>NAME: Jim S. Holotik | TITLE: Vice President of Regency OLP GP LLC, the general partner of Regency Gas Services LP, the sole member of Buyer | DATE: 6/28/13 |
| **SELLER** | SIGNATURE: *[signed]*<br>NAME: *[signed]* | TITLE: President | DATE: 6-29-13 |

1

**EXHIBIT C**

RES PUR-WAHA NPP
071512

## NATURAL GAS SALE AND PURCHASE CONTRACT

| DATE: June 1, 2013 | |
|---|---|
| **BUYER:** REGENCY FIELD SERVICES LLC<br>2001 Bryan Street, Suite 3700<br>Dallas, TX 75201<br>Attn: Contract Administration<br>Phone: (214) 750-1771<br>Fax #: (214) 750-1749 | **SELLER:** ARABELLA PETROLEUM COMPANY, LLC<br>500 W. Texas Ave., Suite 1450<br>Midland, TX 79701<br>Attn: Contract Administration<br>Phone: (432) 897-4755<br>Fax: (800) 729-0160 |

| QUANTITY | Producer's share of the Residue Gas as provided for in the Gathering Agreement between the parties dated June 1, 2013 ("Gathering Agreement"). | |
|---|---|---|
| TERM | Concurrent with the Gathering Agreement. | |
| RECEIPT POINT(S) | At the Delivery Point(s) identified in the Gathering Agreement. | |
| MEASURING PARTY | Regency Field Services LLC | **PAYMENT ADDRESS:**<br>500 W. Texas Ave., Suite 1450<br>Midland, TX 79701 |
| PRICE | Net Proceeds Price - a price per MMBTU equal to 100% of the price that Buyer receives for the sale of Seller's Residue Gas to a downstream purchaser, less any fees, percentage deductions and fuel attributable to such sales. | |

**SPECIAL PROVISIONS:**

THIS SALE IS SUBJECT TO THE "TERMS AND CONDITIONS" ON EXHIBIT "A" ATTACHED TO THIS AGREEMENT.

This represents the agreement reached between **BUYER** and **SELLER**

| BUYER | SIGNATURE: | | |
|---|---|---|---|
| | NAME: Jim S. Holotik | TITLE: Vice President of Regency OLP GP LLC, the general partner of Regency Gas Services LP, the sole member of Buyer | DATE: 6/28/13 |
| SELLER | SIGNATURE: | | |
| | NAME: | TITLE: President | DATE: 6-24-13 |

1

RES PUR-WAHA NPP
071512

# EXHIBIT A
# TERMS AND CONDITIONS

**1. DEDICATION, QUANTITY AND PRICE:** Seller agrees to sell and Buyer agrees to purchase on a firm basis, up to the quantity of natural gas identified in the quantity provision on the front of this agreement. The parties agree that to the extent that any such natural gas is dedicated under the Gathering Agreement, it is dedicated to the same extent exclusively for delivery to Buyer under this agreement. Upon any termination of this agreement, such natural gas will automatically be released herefrom, and once again be delivered under the terms of the Gathering Agreement. Firm hereunder means that either party may interrupt its performance without liability only for reasons of force majeure or under Section 9 or Section 13 below.

In addition, Seller shall have the right to terminate this agreement and elect to take its share of Residue Gas in kind at the Delivery Point upon 60 days advance written notice.

**2. TRANSPORTATION:** Seller shall arrange the natural gas shipment(s) to the Receipt Point(s), and Buyer shall arrange the natural gas shipments thereafter.

**3. MEASUREMENT, HEATING VALUE, AND PRESSURE:** Measurement of the quantity and the heating value of the natural gas purchased is to be made at the Receipt Point(s) by the Measuring Party in accordance the applicable provisions in the Gathering Agreement. Seller shall endeavor to deliver the gas at the Receipt Point(s) at uniform and constant rates of flow. Seller shall deliver the gas at the Receipt Point(s) at line pressures as provided under the Gathering Agreement.

**4. QUALITY:** Buyer is not obligated to purchase any natural gas that does not meet all quality specifications as required in the Gathering Agreement for gas received at the receipt point(s) thereunder.

**5. BILLING AND PAYMENT:** Buyer will provide Seller a statement and invoice on or before the 25th day of each month for the actual quantity delivered by Seller and received by Buyer in the prior month. Buyer will pay Seller on or before the last day of the month following the month of delivery. If the payment date falls on a Saturday, Sunday, or bank holiday, payment will be made on the next business day.

**6. WARRANTIES AND LIMITATIONS OF LIABILITIES:** Seller warrants that it has the right to sell the natural gas delivered and that the natural gas is free from liens and adverse claims of any kind. Seller will indemnify and save and hold Buyer harmless from all loss, damage and expense due to adverse claims against Buyer for the title of the natural gas delivered. If there is an adverse lien or claim on Seller's gas, Buyer has the right to suspend, with interest, payment for the quantity of Seller's gas subject to the lien or claim until it is resolved to the satisfaction of Buyer.

**7. TITLE AND POSSESSION:** Title to the natural gas sold hereunder shall pass to Buyer at the Receipt Point(s). Seller, or Seller's designee, shall be in control and possession of the natural gas and responsible for any damage or injuries caused thereby until the natural gas is delivered to Buyer or Buyer's designee at the Receipt Point(s), except for injuries and damage caused by the negligence of Buyer. Buyer shall be in control and possession of the natural gas and responsible for any damage or injuries caused thereby after the natural gas is delivered at the Receipt Point(s), except for injuries and damage caused by the negligence of Seller.

**8. TAXES AND ROYALTIES:** Seller will pay all severance, production, excise or similar taxes imposed or levied by the state or any other governmental entity on the gas produced, sold or delivered hereunder and Seller shall remit such tax to the applicable governmental entity. The price paid to Seller shall be inclusive of such tax. Seller will pay all royalties, overriding royalties, bonus payments, production payments and the like accruing from the production and sale of Gas hereunder.

**9. REGULATIONS AND RESERVATIONS:** Seller further represents that the sale(s) by Seller to Buyer under this agreement qualifies as a first sale of wellhead gas. This agreement and the purchase and sale of gas hereunder is

2

RES PUR-WAHA NPP
071512

subject to all applicable governmental laws, orders, directives, rules, and regulations, including without limitation those affecting common purchasers, and any gatherers or transporters that gather and transport the gas hereunder. The provisions in the **Reservations of Producer** and **Reservations of Gatherer** sections of the Gathering Agreement are incorporated and apply hereunder where Producer is Seller and Gatherer is Buyer.

    **10. FORCE MAJEURE:** The Force Majeure provisions of the Gathering Agreement shall apply to this agreement.

    **11. ASSIGNMENT:** Either party may assign its rights, obligations, or interests in this agreement without the written consent of the non-assigning party.

    **12. AUDIT:** Upon execution of a Confidentiality Agreement and except as limited herein, each party hereto, or its representative, has the right to examine the books and records of the other party to the extent necessary to verify the accuracy of any statement, charge, computation or demand made hereunder. Any statement is final as to all parties unless questioned within two (2) years after the statement is issued. No party shall be required to permit more than one audit of its books and records in any rolling twelve month period, and no party shall be required to permit an audit of books and records supporting a statement that is deemed final in accordance with the immediately preceding sentence.

    **13. CURTAILMENT:** If a downstream pipeline to which Buyer is delivering gas, curtails physical receipts or deliveries of gas, then Buyer will purchase Gas hereunder to the extent that it can sell or transport the Gas on such downstream pipeline or other pipelines for the duration of the curtailment period.

    **14. CONFIDENTIALITY:** The parties will keep confidential all of the terms, conditions and obligations of this Agreement; provided, the parties may provide information only to the extent as may be required to effectuate the gathering or purchase of gas, or to meet the requirements of any law, court or regulatory agency having jurisdiction over the matter for which information is sought.

    **15. CHOICE OF LAW: BUYER AND SELLER EXPRESSLY AGREE THAT THE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE VALIDITY, CONSTRUCTION, INTERPRETATION, AND EFFECT OF THIS AGREEMENT (INCLUDING ANY TERMS OF THE GATHERING AGREEMENT REFERENCED OR INCORPORATED HEREIN), WITHOUT REFERENCE TO ITS CONFLICT-OF-LAW OR CHOICE-OF-LAW PRINCIPLES. ANY SUIT BROUGHT RELATING IN ANY WAY TO THIS AGREEMENT SHALL BE BROUGHT IN EITHER THE STATE OR FEDERAL COURTS OF DALLAS COUNTY, TEXAS. THE PARTIES AGREE THAT IF EITHER PARTY INSTITUTES SUIT TO ENFORCE ANY RIGHT OR OBLIGATION AGAINST THE OTHER PARTY ARISING OUT OF OR INCIDENTAL TO THIS CONTRACT THEN THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE ATTORNEY'S FEES, COURT COSTS, AND EXPENSES RELATED THERETO.**

    **16. INCORPORATION:** The terms of the Gathering Agreement referenced herein are incorporated by such references. Capitalized terms used but not defined herein shall be as defined in the Gathering Agreement.

GL-AIC
081513

## GAS LIFT AMENDMENT

This GAS LIFT AMENDMENT is entered into this 1st day of January, 2014, by and between REGENCY FIELD SERVICES LLC ("Gatherer") and ARABELLA PETROLEUM COMPANY, LLC ("Producer").

### WITNESSETH:

WHEREAS, Gatherer and Producer are parties to that certain Gas Gathering Agreement dated June 1, 2013, as amended, Gatherer's File Number 0264GGP ("Agreement"), covering Producer's interest in the Woods #1H well located in Reeves County, Texas, Gatherer's Meter Number 578981112 ("Well"); and

WHEREAS, the parties desire to enter into this Gas Lift Amendment to enable Producer to receive gas from Gatherer for gas lift service for the Well from a new meter installed at a mutually agreeable location ("Gas Lift Meter"); and

NOW THEREFORE, Gatherer and Producer agree as follows:

I.

Gatherer shall construct and install all pipelines, meters, valves, and related facilities ("Facilities") required to deliver gas to Producer for gas lift at the Well ("Gas Lift Gas"). Gatherer shall at all times be the sole owner and operator of the Facilities.

II.

Producer will pay Gatherer the sum of $25,000.00 as aid in construction. Upon receipt of such payment from Producer and execution of this Amendment, Gatherer will proceed with the installation of the Facilities in a timely manner consistent with Gatherer's normal operating practice.

III.

For purposes of assessing fees and fuel and determining amounts due under Article V of the Agreement, Gatherer shall deduct the quantity of Gas Lift Gas from the quantity of gas received from the Well. In the event the quantity of Gas Lift Gas, in MMBtu, delivered to Producer over the course of a month is greater than the quantity of gas, in MMBtu, delivered from the Well during the same month, such excess MMBtu for such month shall be referred to as "Excess Gas Lift Gas." Producer shall pay Gatherer as follows: ("EGLG Value"):

$(A \times B) + (C \times D) = $ EGLG Value

Where:

A = the quantity of Residue Gas allocated to Producer attributable to the Excess Gas Lift Gas; and
B = the average price that Gatherer receives for the sale of all Residue Gas during the subject month; and
C = the quantity of Plant Products allocated to Producer attributable to the Excess Gas Lift Gas; and

GL-AIC
081513

D = the weighted average product price received by Gatherer from purchasers of all plant products during the subject month at the tailgate of the Plant for each hydrocarbon component, net of all direct and indirect expenses, taxes, fees, and adjustments incurred by Gatherer in connection with the sale, transportation and delivery of such plant products.

IN WITNESS WHEREOF, the parties have executed this Gas Lift Amendment as of the date set forth above.

**GATHERER:**
**REGENCY FIELD SERVICES LLC**
By: Regency Gas Services LP, its sole member
By: Regency OLP GP LLC, its general partner

By: _____
Name: Jim S. Holotik
Title: Vice President

**PRODUCER:**
**ARABELLA PETROLEUM COMPANY, LLC**

By: _____
Name: _____
Title: President

GL-AIC
020114

## GAS LIFT AMENDMENT

This GAS LIFT AMENDMENT is entered into this 1st day of February, 2014, by and between REGENCY FIELD SERVICES LLC ("Gatherer") and Arabella Petroleum Company, LLC ("Producer").

### WITNESSETH:

WHEREAS, Gatherer and Producer are parties to that certain Gas Gathering Agreement dated June 1, 2013, as amended, Gatherer's File Number 0264GGP ("Agreement"), covering Producer's interest in the Jackson #1H well located in Ward County, Texas, Gatherer's Meter Number 578981153 ("Well"); and

WHEREAS, the parties desire to amend the Agreement to enable Producer to receive gas from Gatherer for gas lift service for the Well from a new meter installed at a mutually agreeable location ("Gas Lift Meter"); and

NOW THEREFORE, Gatherer and Producer agree as follows:

I.

Gatherer shall construct and install the Gas Lift Meter and all pipelines, valves, and related facilities ("Gas Lift Facilities") required to measure and deliver gas to Producer for gas lift at the Well. Gatherer shall at all times be the sole owner and operator of the Gas Lift Facilities.

II.

Producer will pay Gatherer the sum of $25,000.00 as aid in construction. Upon receipt of such payment from Producer and execution of this Amendment, Gatherer will proceed with the installation of the Gas Lift Facilities in a timely manner consistent with Gatherer's normal operating practice.

III.

For purposes of assessing fees and fuel and determining amounts due under Article V of the Agreement, Gatherer shall deduct the quantity of gas measured at the Gas Lift Meter from the quantity of gas received from the Well. In the event the quantity of Gas Lift Gas, in MMBtu, delivered to Producer over the course of a month is greater than the quantity of gas, in MMBtu, delivered from the Well during the same month, such excess MMBtu for such month shall be referred to as "Excess Gas Lift Gas." Producer shall pay Gatherer as follows: ("EGLG Value"):

$(A \times B) + (C \times D) = $ EGLG Value

Where:

A = the quantity of Residue Gas allocated to Producer attributable to the Excess Gas Lift Gas; and
B = the average price that Gatherer receives for the sale of all Residue Gas during the subject month; and
C = the quantity of Plant Products allocated to Producer attributable to the Excess Gas Lift Gas; and

GL-AIC
020114

D = the weighted average product price received by Gatherer from purchasers of all plant products during the subject month at the tailgate of the Plant for each hydrocarbon component, net of all direct and indirect expenses, taxes, fees, and adjustments incurred by Gatherer in connection with the sale, transportation and delivery of such plant products.

The Agreement is amended to the extent noted herein. In all other respects, it is confirmed and shall continue in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Gas Lift Amendment as of the date set forth above.

GATHERER:
REGENCY FIELD SERVICES LLC
By: Regency Gas Services LP, its sole member
By: Regency OLP GP LLC, its general partner

By: _____
Name: Jim S. Holotik
Title: Vice President

PRODUCER:
ARABELLA PETROLEUM COMPANY, LLC

By: _____
Name: Chad D. Elliott
Title: COO

GL-AIC
081513

# GAS LIFT AMENDMENT

This GAS LIFT AMENDMENT is entered into this 1st day of March, 2014, by and between REGENCY FIELD SERVICES LLC ("Gatherer") and ARABELLA PETROLEUM COMPANY, LLC ("Producer").

**WITNESSETH:**

WHEREAS, Gatherer and Producer are parties to that certain Gas Gathering Agreement dated June 1, 2013, as amended, Gatherer's File Number 0264GGP ("Agreement"), covering Producer's interest in the Emily Bell wells located in Reeves County, Texas, Gatherer's Meter Number *TBD* ("Well"); and

WHEREAS, the parties desire to enter into this Gas Lift Amendment to enable Producer to receive gas from Gatherer for gas lift service for the Well from a new meter installed at a mutually agreeable location ("Gas Lift Meter"); and

NOW THEREFORE, Gatherer and Producer agree as follows:

I.

Gatherer shall construct and install all pipelines, meters, valves, and related facilities ("Facilities") required to deliver gas to Producer for gas lift at the Well ("Gas Lift Gas"). Gatherer shall at all times be the sole owner and operator of the Facilities.

II.

Producer will pay Gatherer the sum of $25,000.00 as aid in construction. Upon receipt of such payment from Producer and execution of this Amendment, Gatherer will proceed with the installation of the Facilities in a timely manner consistent with Gatherer's normal operating practice.

III.

For purposes of assessing fees and fuel and determining amounts due under Article V of the Agreement, Gatherer shall deduct the quantity of Gas Lift Gas from the quantity of gas received from the Well. In the event the quantity of Gas Lift Gas, in MMBtu, delivered to Producer over the course of a month is greater than the quantity of gas, in MMBtu, delivered from the Well during the same month, such excess MMBtu for such month shall be referred to as "Excess Gas Lift Gas." Producer shall pay Gatherer as follows: ("EGLG Value"):

$(A \times B) + (C \times D) = $ EGLG Value

Where:

A = the quantity of Residue Gas allocated to Producer attributable to the Excess Gas Lift Gas; and
B = the average price that Gatherer receives for the sale of all Residue Gas during the subject month; and
C = the quantity of Plant Products allocated to Producer attributable to the Excess Gas Lift Gas; and

GL-AIC
081513

D = the weighted average product price received by Gatherer from purchasers of all plant products during the subject month at the tailgate of the Plant for each hydrocarbon component, net of all direct and indirect expenses, taxes, fees, and adjustments incurred by Gatherer in connection with the sale, transportation and delivery of such plant products.

IN WITNESS WHEREOF, the parties have executed this Gas Lift Amendment as of the date set forth above.

**GATHERER:**
**REGENCY FIELD SERVICES LLC**
By: Regency Gas Services LP, its sole member
By: Regency OLP GP LLC, its general partner

By: _[signature]_
Name: Jim S. Holotik
Title: Vice President

**PRODUCER:**
**ARABELLA PETROLEUM COMPANY, LLC**

By: _[signature]_
Name: Bill Elliott
Title: VP Operations